Argued June 6, affirmed October 9, 1963

# KOWALESKI *v.* KOWALESKI

385 P. 2d 611

*Milton O. Brown,* Portland, argued the cause for appellant. With him on the briefs were Brown & Kettleberg and Richard Egner, Jr., Portland.

*Roland Banks, Jr.,* Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson and Gordon Moore, Portland.

Before PERRY, Presiding Justice, and O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

DENECKE, J.

This is an automobile accident case.

The sole issue is: was the driver of the car, *as a matter of law,* the servant of the owner of the car? The trial court left this question of agency to the jury. The jury returned a defendant's verdict.

The driver, Andrew Kowaleski, and the car owner, Antone Kowaleski, are brothers. They operate a service station in Portland. After work Antone planned to go to Andrew's home and have dinner with Andrew and Andrew's wife, the plaintiff. Antone owned a farm at Scappoose, Oregon, a town about 25 miles from Portland. When the plaintiff came over to pick up her husband, Andrew, Antone asked Andrew to drive Antone's car to Scappoose and do the necessary chores at the farm. (Antone made this request because he was wet from working outside.) Andrew agreed and drove away in Antone's car.

Antone's car, driven by Andrew, collided with Andrew's car, driven by plaintiff, Andrew's wife, and in which Antone was riding as a passenger. In this same action we previously decided plaintiff could maintain an action for personal injuries against Antone, although she could not maintain one against Andrew, as he was her husband. *Kowaleski v. Kowaleski,* 227 Or 45, 361 P2d 64 (1961)①.

The testimony varies as to what instructions Antone gave Andrew. Antone testified he simply asked him if he would go out to the farm and feed the stock. Plaintiff stated Antone gave more detailed directions.

Andrew received no compensation for his efforts. He expected none. He had done this same favor for his brother before. Andrew described it as a friendly gesture he would have done for anyone who asked.

These facts pose this question: Is a car owner liable, as a matter of law, for the acts of a friend or

---

① The opinion in that appeal describes Andrew as "the defendant's employee." That appeal, however, was from a judgment for the defendant on the pleadings and, therefore, this court had to assume the allegations of the complaint were correct.

relative driving the owner's car in the gratuitous performance of an errand for the owner?

██ Several accepted principles are involved in the solution of this problem. Under some circumstances when a car owner permits another to take his car, a bailment is created. The bailor, the owner of a car, is not vicariously liable for the negligence of the bailee of the car. For example, see *Kantola v. Lovell Auto Co.*, 157 Or 534, 72 P2d 61 (1937). On the other hand, pursuant to the principle of respondeat superior, a master-car owner is liable for the negligence of his servant-driver, acting within the scope of his employment.

██ Whether or not a car owner is responsible for the acts of his driver has been couched in terms of both principal and agent and master and servant. *Houston v. Keats Auto Co.*, 85 Or 125, 166 P 531 (1917); *Kantola v. Lovell Auto Co.*, supra. The relationship of master and servant is one type of agency. 1 Restatement 2d 477 et seq, Agency § 218. All servants are agents and all masters, principals. However, all principals and agents are not also masters and servants. The Comment to § 250, 1 Restatement 2d 549-550, Agency, states the distinction as follows:

"A principal employing another to achieve a result but not controlling or having the right to control the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relation of principal and agent there is added that right to control physical

details as to the manner of performance which is characteristic of the relation of master and servant that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor. * * *"

■■ One can be a servant even though the service is performed gratuitously. *Butenshon v. Shoesmith,* 191 Or 76, 83, 228 P2d 426 (1951). Proof of ownership of the car by one other than the driver, together with proof that the car was being driven with the permission of the owner, creates a prima facie case that the driver was acting as the servant of the owner. This, however, can be refuted by proof that the driver is acting in a status other than that of servant. *Judson v. Bee Hive Auto Service Co.,* 136 Or 1, 294 P 588, 297 P 1050, 74 ALR 944 (1931).

■ Many functional and analytical analyses have been advanced to solve the problem of when should a car owner or master generally be liable for the acts of a car driver or servant. Right by the master to control the conduct of the driver is the favorite approach of the courts, including this court. *Larkins v. Utah Copper Co.,* 169 Or 499, 505, 127 P2d 354 (1942).[2] This is broken down into a more detailed statement: is there an assumption of control by one and a submission to control by the other? *Kantola v. Lovell Auto Co.,* supra (157 Or at 537) (general statement); 1 Restatement 2d 492, Agency § 220, Comment *m.* (specific statement as to control).

[2] Modern law review writers, however, prefer a broader social and economic approach—a risk distribution based upon some kind of enterprise liability. For example, see G. Robert Morris, Jr., *Enterprise Liability and the Actuarial Process—The Insignificance of Foresight,* 70 Yale L J 554 (1961), and Guido Calabresi, *Some Thoughts on Risk Distribution and the Law of Torts,* in the same issue at 499.

In the case of a paid, regular servant driving a company car on company business, it is simple to state, as a matter of law, that under those circumstances the master has the right to control the driving of the servant. The determination of the right to control is far from simple when a friend or relative is driving another's car to do a favor for the car owner.

We realize that on some occasions instructing the jury to determine whether or not the driver was the servant of the owner on the basis of whether or not the owner had the right to control the driver's conduct is really of no assistance to the jury.[9] On such occasions the jury actually decides a policy rather than a factual question. It decides whether, under the circumstances, the car owner should be responsible for the driver's negligence. Nevertheless, we adhere to the right to control test. None of the other alternatives appear to us to offer a better solution.

---

[9] The court's instruction in this case was as follows:

"I instruct you that in order to create an agency there must be evidence of a relationship between the parties in this case, the Defendant and the Plaintiff's husband, which results from a manifestation of consent, express or implied, by the one to the other; that the other shall act on his behalf and subject to his control, and there must be consent, express or implied, by the other to so act. Those elements are essential to the creation of an agency."

This was almost verbatim an instruction requested by the defendant. This form of instruction was not objected to by the plaintiff. Plaintiff did, however, except to the court's failure to instruct the jury that Andrew was the agent of Antone.

After the jury had initially retired, it returned and asked the court "if the consideration of money is necessary in connection with the question of agency." The court instructed it as follows:

"I instruct you ladies and gentlemen of the jury that the payment of money for services is some evidence of the creation of an agency, but that an agent—an agency may exist without the payment of money or without any understanding that money is to be paid for services."

1 Restatement 2d 485, Agency § 220, is as follows:

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor,[@] the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

---

@ "As the term is here used, independent contractor is the antithesis of servant. It is a technical phrase, used to include all who have agreed with another to act on his account and who are not servants. The term includes all agents who are not servants, as well as many other persons who render services but are not agents; the presence or absence of a fiduciary relation is immaterial in the idea of 'independent contractor', although many independent contractors are agents. The accent is upon 'independent' and not upon 'contractor', since the group of 'independent contractors' includes persons acting gratuitously." 1 Restatement 2d 480, Agency § 218.

"(h) whether or not the work is a part of the regular business of the employer;

"(i) whether or not the parties believe they are creating the relation of master and servant; and

"(j) whether the principal is or is not in business."

■ We accept the general principle enunciated by this section that in determining whether one is a servant or independent contractor various factors must be considered. Performing services for another and using the other's car in such performance do not necessarily, in and of themselves, conclusively prove the existence of a master-servant relationship. Here, there are other influencing factors that also must be considered, such as, that the service was performed gratuitously, the actors were brothers, and Antone was not present in his car.

■ Plaintiff contends that the facts here are uncontradicted and, therefore, under the law as announced in *Wiebe v. Seely, Administrator,* 215 Or 331, 335 P2d 379 (1959), have to be accepted by the jury as correct. Assuming that the jury must find that Andrew was driving Antone's car to Antone's farm to do Antone's chores, we hold that the jury need not necessarily infer from such facts that Antone thereby assumed the right of control and Andrew submitted thereto. Other facts in evidence, as previously mentioned, could reasonably lead the jury to the opposite conclusion.

"* * * The factors stated in Subsection (2) [of § 220 as quoted above] are all considered in determining the question, and it is for the triers of fact to determine whether or not there is a sufficient group of favorable factors to establish the relation. * * *" 1 Restatement 2d 486-487, Agency § 220, Comment *c.*

*White v. Keller,* 188 Or 378, 215 P2d 986 (1950), whatever is left of its vitality after *Johnson v. L.A.-Seattle Mtr. Exp., Inc.,* 222 Or 377, 352 P2d 1091 (1960), is not controlling. In *White v. Keller,* supra, the car owner was riding in the car with the driver. Antone, of course, was riding with the plaintiff, not Andrew.

1 Restatement 2d 487, Agency § 220, Comment *d,* states:

> "Where the owner of a vehicle driven by a guest is in the vehicle, there is ordinarily an inference that he is in control, rebuttable only if he agrees with the guest to surrender complete control to him."

*Downes v. Norrell,* 261 Ala 430, 74 S2d 593 (1954), is in accord with the proposition that the right of control is generally a question of fact. *Rogge v. Great Northern Railway Co.,* 233 Minn 255, 47 NW2d 475 (1951), is contra.

Whether or not Andrew was acting as a servant of Antone involves questions of fact which the jury was entitled to solve. Judgment affirmed.