Argued June 7, affirmed August 2, 1977

STREIGHT, *Appellant,*
*v.*
CONROY, *Respondent.*
(No. 35-370, SC 24693)

566 P2d 1198

Charles D. Burt, Salem, argued the cause for appellant. On the briefs were J. Michael Alexander, and Brown, Burt & Swanson, P. C., Salem.

Walter J. Cosgrave, Portland, argued the cause for respondent. With him on the brief were Cosgrave & Kester, Portland.

BRYSON, J.

## BRYSON, J.

Plaintiff's wife and defendant were involved in an automobile accident. Plaintiff's wife brought an action against defendant for personal injuries sustained. Plaintiff filed this action to recover damages for loss of consortium. The cases were consolidated for trial. Defendant admitted liability for the accident but denied injury and damage to plaintiff.

The jury returned separate verdicts and found in favor of plaintiff's wife in her action for personal injuries but against plaintiff in his action for loss of consortium. Plaintiff appeals and contends "[t]he Jury's verdict for Defendant is inconsistent with their award in Mrs. Streight's companion case and unsupported by the evidence."

■ In a similar case, *Schmitz v. Yant,* 242 Or 308, 318, 409 P2d 346 (1965), involving loss of consortium, we held:

> "We believe the relations between husband and wife brought into question by an action for loss of consortium * * * are of so intimate a character that the question of damages almost always is one where a jury may properly test the credibility of the witnesses. *Huber v. May,* 239 Or 544, 398 P2d 481 (1965). Not only is the availability of evidence to contradict almost nil, but plaintiff has a direct interest in the outcome and her husband a very material indirect interest as well. We believe it to be a case in which the jury could properly withhold damages."

■ Plaintiff had the burden of proving damages. To meet this burden, plaintiff offered his testimony and that of his wife and son. Plaintiff also called medical experts who testified his wife suffered permanent disability as a result of the accident. To contradict this, defendant called medical experts who testified that plaintiff's wife was suffering from a "severe anxiety state rather than any actual disability" and that there were no objective symptoms to support her claims of pain.

[ 291 ]

■ Plaintiff's witnesses, son and wife, had an interest in the outcome of the case. Whether there was loss of consortium was peculiarly within the knowledge of plaintiff and his witnesses. These two factors obviated the necessity of their testimony being accepted at face value by the jury, even if it was uncontradicted. *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962); *Grubb v. Boston Old Colony Ins.,* 257 Or 208, 212, 477 P2d 901 (1970); *Chopp v. Miller,* 264 Or 138, 142, 504 P2d 106 (1972).

■ Plaintiff's case and his wife's case, although consolidated for trial, are separate cases. We conclude that the jury could disbelieve the plaintiff's witnesses as to loss of consortium. Therefore, the jury could find that plaintiff failed to carry his burden of proof.

Plaintiff also contends the court erred "by allowing two defense witnesses to conclude from photographs of one of the automobiles involved in the collision between Plaintiff's wife and Defendant, that the impact to Plaintiff's wife's car was minor and therefore unlikely to cause the injuries complained of."

This assignment of error grows out of a hypothetical question presented by defendant to his expert medical witnesses which asked whether the accident could have caused plaintiff's wife's lumbar back problems. Photographs were received in evidence showing the damage to the rear end of Mrs. Streight's vehicle and to the front end of the automobile that struck her vehicle. Rather than designating the force of the impact for purposes of the hypothetical, defense counsel asked his medical experts to assume that the force involved had been that causing the damage shown in the photographs. From the pictures, defendant's medical experts first deduced that the impact had been minor, that the impact was from the rear, and then concluded that plaintiff's wife's lumbar back problems were not attributable to her accident with defendant.

Plaintiff's expert, Dr. McGill, testified as follows:
"A   Well, at least from the appearance of the auto-

mobile as indicated by the photograph it would not appear to have been a very severe blow[1] and therefore the dynamics of the accident, if injury did in fact occur would be primarily to the neck.

"The driver of the car usually is sufficiently braced by the steering wheel and the low back, in a chair much as the same that I am in, therefore it is supported and of course unless there is a headrest which most cars have now, the head will snap back at the time of the accident.

"* * * * *.

"Now, it was certainly the impression that I got from reading the records and redoing the case of Mrs. Streight, that the injury immediately after the accident, treatment was specifically designed to treat the neck. The back was a later occurring problem."

Defendant's expert, Dr. Gripekoven, testified:

"A Assuming an accident with limited impact, I would feel that the lumbar spine is a much less hazard than the cervical spine. It would be relatively protected because the patient by the nature of her position as you describe in your hypothetical would be braced against the seat and in the lumbar region and the head and neck, of course, are a much higher risk because they are unprotected and exposed to the forces which are not controlled and with this type of injury it is my experience greater forces are required to produce lumbar injuries in this type of accident."

The photographs show there was minor damage to the rear end of Mrs. Streight's vehicle and limited impact between Mrs. Streight's car and the car that struck her.[2]

■ There is no reason an expert witness cannot use evidence received to assist him in reaching an opinion. *See Peterson v. Schlottman,* 237 Or 484, 487, 392 P2d 262 (1964), and cases cited in *Harpole v. Paeschke Farms, Inc.,* 267 Or 592, 599 n. 1, 518 P2d 1023 (1974).

---

[1] Dr. McGill had previously testified that he had determined from the case history taken of plaintiff's wife that "the impact was not especially severe."

[2] This was an accident where the defendant's vehicle struck an automobile which was pushed into the rear of Mrs. Streight's vehicle.

[ 293 ]

In giving their opinion evidence, the defendant's experts relied not only on the photographs in evidence but also on their expertise as medical doctors.

Plaintiff relies upon cases prohibiting non-eyewitnesses from expressing "an opinion, based solely upon the physical facts existing following an accident, as to the rate of speed prior to the accident." *Bailey v. Rhodes, Adm.,* 202 Or 511, 523, 276 P2d 713 (1954) (rate of speed based solely on physical facts and not as eyewitness); *Marshall v. Martinson,* 268 Or 46, 53-56, 518 P2d 1312 (1974) (opinion as to course of vehicle based on facts not in evidence).

■ These cases do not stand for the proposition before us. Here the jury could view the photographs of the vehicle and from this and other evidence could decide the force of the impact between the two cars. They could then give such weight to the experts' testimony as they saw fit or they could disregard it. The court did not err in this respect.

Plaintiff next contends "[t]he trial court erred in refusing to allow Plaintiff's wife's treating physician to testify to the results of a discogram performed at his request by another Doctor."

What actually happened in the trial of the case was that defendant objected to plaintiff's medical witness reading another doctor's report into the record verbatim.

■ Plaintiff cites *Lewis v. Baker,* 243 Or 317, 326, 413 P2d 400 (1966), for the proposition that "expert medical witnesses may properly base their opinions upon doctor and hospital charts and records to the same extent that they would normally rely upon the same documents in the treatment of their patients." The foregoing is a correct statement of the law but the case does not allow the report of a doctor not present for cross-examination to be read into evidence in violation of the rule prohibiting hearsay evidence. To allow such a practice would deprive opposing parties of an oppor-

tunity to cross-examine on the background, competency and completeness of the report and the qualifications of the doctor.

The issue here is analogous to that presented under the medical records exception to the hearsay rule, discussed in McCormick on Evidence 732, § 313 (2d ed 1972):

> "When an expert opinion is offered by a witness personally testifying, the expert is available for cross-examination on that opinion. If the opinion is offered by means of a hospital record, no cross-examination is possible. Consequently, there is a tendency somewhat to limit those opinions which can be introduced by this method. The admissibility of ordinary diagnostic findings customarily based on objective data and not usually presenting more than average difficulty of interpretation is usually conceded. *On the other end of the continuum, diagnostic opinions which on their face are speculative are reasonably excluded. In the absence of the availability of the declarant for explanation and cross-examination, the probative value of this evidence is outweighed by the danger that it will be abused or mislead the jury. * * *"* (Emphasis added; footnotes omitted.)

■ In the instant case, testimony was presented that the discogram is a controversial procedure. Plaintiff offered some evidence explaining the procedure but offered no evidence explaining the difficulty or complexity of the test or its interpretation. We conclude that the trial court acted within its discretion in disallowing the evidence.

Affirmed.