Argued November 3, affirmed December 27, 1978, petition for
rehearing denied January 23, 1979

## STANFIELD, *Respondent,*
### *v.*
## LACCOARCE, *Defendant,*
## LACCOARCE et ux, *Appellants.*
## (No. 76 0111, SC 25476)
588 P2d 1271

[ 652-a ]

Robert L. Cowling, Medford, argued the cause for appellants. With him on the briefs were Patrick Ford, and Ford and Cowling, Medford.

James H. Spence, Roseburg, argued the cause for respondent. With him on the brief were Verdon L. Hockett, Jr., and Spence, O'Neal & Banta, Roseburg.

Before Denecke, Chief Justice, and Holman, Tongue, Howell and Linde, Justices.

HOWELL, J.

## HOWELL, J.

Plaintiff brought this action for damages arising out of an accident in which the defendant Roy Laccoarce's truck collided with an automobile in which plaintiff was a passenger. The jury returned a verdict for plaintiff, and defendants appeal.

The accident occurred on November 26, 1975, at the crest of Camas Mountain in Douglas County. Roy Laccoarce was returning from a trip to Roseburg to his home in Camas Valley. The time was late afternoon, it was dark, and light rain was falling. Roy had passed two or three other vehicles going up the grade, and his speed was estimated at 70 miles per hour. Despite the fact that his view was obstructed by a curve, Roy attempted to pass another vehicle 800 to 1,000 feet from the scene of the accident. There was evidence that his vehicle began sliding on the curve, entered the opposite lane, and struck the vehicle in which plaintiff was riding. Roy contended that he was not traveling in excess of 55 miles per hour and that the accident on the curve occurred in his own lane of travel.

There was conflicting evidence with respect to the primary purpose of Roy's trip to Roseburg, but there was evidence from which the jury could reasonably conclude that at least one purpose was to pick up supplies for various businesses owned by Roy's parents in Camas Valley.

Plaintiff sued Roy Laccoarce and his parents, James and Pauline Laccoarce, contending that Roy was negligent and that at the time of the accident Roy was acting as an employee of his parents. On appeal, defendants raise twelve assignments of error, many of which involve the same legal issues. Because the jury returned a verdict for plaintiff, any conflicts in the evidence must be resolved in plaintiff's favor. *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 509 P2d 1199 (1973).

Defendants[1] first contend that the trial court erred in submitting the case to the jury because there was insufficient evidence to show that Roy was acting as his parents' employee at the time of the accident. From the evidence presented at trial, the jury could reasonably have found the following facts to be true.

The Laccoarces ran a grocery store, cafe, and ambulance service in Camas Valley. They also owned a service station that was operated by one Hiram Cunningham for a percentage. Mrs. Laccoarce testified that Roy worked at the grocery store and cafe as a "part time cook and part time was available if I needed him and he's helped stock on the heavier stuff and unloaded and occasionally did chores in town."

After arriving in Roseburg on the date of the accident, Roy picked up an order from a grocery wholesaler and an order from a candy company for his parents' store. He also picked up some automotive parts for his parents' service station. He went to the bank where his parents maintained their checking account, made a deposit for his parents, and picked up change for them.

Roy made a number of inconsistent statements concerning the principal purpose of his trip to Roseburg. Initially, he claimed the trip was "business" related. He subsequently changed his story, claiming the trip was made primarily to see a friend about a trip to San Francisco. There was evidence that Roy was licensed to drive for occupational purposes only at the time of the accident.

■■■ Under the doctrine of respondeat superior, an employer is liable for the torts of his employee when the employee is acting within the scope of his employment. *United Pac. Ins. v. Truck Ins. Exch.,* 273 Or 283,

---

[1] Although Roy Laccoarce is also a defendant in this action, we will use the word "defendants" throughout this opinion to refer to the defendants James and Pauline Laccoarce only. Roy Laccoarce is not a party to this appeal.

541 P2d 448 (1975). In deciding whether an employee was acting within the scope of his employment, the factors to be considered are whether the act in question is of a kind the employee was hired to perform, whether the act occurred substantially within the authorized limits of time and space, and whether the employee was motivated, at least in part, by a purpose to serve the employer. *Gossett v. Simonson,* 243 Or 16, 24, 411 P2d 277 (1966), *quoting* Restatement (Second) of Agency § 228 (1958). The scope of employment limitation is designed to ensure that employers will be held liable only for harm resulting from activity from which they were receiving the benefit. "[T]he ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed." Restatement (Second) of Agency § 229, Comment a (1958). Consequently, we have held that the question of whether or not an employee has acted within the scope of his employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts. *Gossett v. Simonson, supra; Kowaleski v. Kowaleski,* 235 Or 454, 385 P2d 611 (1963). This is not a case in which only one reasonable conclusion can be drawn from the facts.

Mrs. Laccoarce herself testified that Roy worked as a "part time cook and part time was available if I needed him * * * *and occasionally did chores in town.*" (Emphasis added.) No contention is made that the route Roy travelled in returning to Camas Valley was an unauthorized one. The jury could therefore have concluded that the trip Roy made to Roseburg was "of a kind the employee was hired to perform" and that he was operating "within the authorized limits of time and space" at the time the accident occurred.

■■ Defendants argue that there was no evidence that they had any "right to control" the conduct of Roy at

the time of the accident.[2] We have recognized, particularly in automobile cases, that the "right to control" test is often of no assistance in deciding whether an employee is acting within the scope of his employment. *Kowaleski v. Kowaleski, supra* at 459. No employer can "control" the manner in which an employee drives or other details of his trip. In reality, the question of whether the employer had a "right to control" the employee is merely another way of asking whether the activity in question occurred within the authorized limits of time and space, so that it is fair to make the employer vicariously liable for the conduct of the employee. Viewed in this manner, there was evidence, as noted above, from which the jury could conclude that defendants had a "right to control" Roy's trip to Roseburg.

■ Defendants' principal contention is that the primary purpose of Roy's trip was personal and that he was not motivated by a desire to serve his parents. We think there was ample evidence from which the jury could have reached the opposite conclusion. Roy made a number of statements, both in his deposition and to other Camas Valley residents shortly after the accident, that the purpose of his trip was related to his parents' "business." Additionally, the jury was entitled to consider the evidence that Roy was licensed to drive for job-related purposes only at the time of the accident.

■ Defendants argue that the trial court should not have considered Roy's out-of-court statements in deciding whether there was sufficient evidence to present a jury question as to the purpose of Roy's trip because those statements were hearsay, and therefore should not have been admitted in evidence. In *Elam v.*

---

[2]Defendants contend that their lack of control over Roy "is conclusively established by the fact that Roy Laccoarce received no payment for this service which was totally unrelated to his work as a part-time cook." This contention is inconsistent with prior cases in which we have held that one can be a servant even though no remuneration is received. *See, e.g., Kowaleski v. Kowaleski,* 235 Or 454, 458, 385 P2d 611 (1963).

*Soares,* 282 Or 93, 577 P2d 1336 (1978), we defined hearsay as

"* * * testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." 282 Or at 97, *quoting* McCormick on Evidence 584 (2d ed 1972).

It is clear that the statements to which defendants object in the present case were not excludable as hearsay, as they were not offered "to show the truth of the matter asserted therein." Rather, they were offered to prove Roy's state of mind, which was a fact in issue under the "scope of employment" test. Therefore, the court did not err in admitting the testimony, and the testimony could be considered in determining whether Roy made his trip to Roseburg for job-related purposes.

On the basis of the evidence reviewed above, we conclude that the court did not err in denying defendants' motion for a directed verdict. This is not a case in which the facts are undisputed and only one reasonable inference can be drawn from the facts. *Cf., Heide/Parker v. T.C.I. Incorporated,* 264 Or 535, 506 P2d 486 (1973) (facts clearly showed that employee was returning home from work and was no longer on the job). The trial court correctly denied defendants' motion for a directed verdict.

Defendants next contend that the trial court erred in instructing the jury that it could find Roy Laccoarce to be negligent if it determined that he was in violation of certain traffic safety statutes at the time of the accident.[3] Defendants claim that under our holding in *Barnum v. Williams,* 264 Or 71, 504 P2d

---

[3]The relevant statutes are: ORS 487.465, 487.470(4) (the basic speed rule and the 55 miles per hour limitation); ORS 487.165 (requiring driver to drive on the right of the highway); ORS 487.190 (requiring vehicles proceeding in the opposite direction to pass on the right and to give each other one half of the roadway); and ORS 487.195(3) (prohibiting driving on the left side of the center line when the driver's view is obstructed).

122 (1972), the trial court should have instructed that violation of the statutes is not negligence as a matter of law if the driver was acting as a reasonable person under the circumstances. We find this argument untenable.

The rule in *Barnum* is that a party is guilty of negligence as a matter of law if he violates a motor vehicle statute and if no evidence is presented that he was acting reasonably under the circumstances.

Roy Laccoarce did not admit any statutory violation and contended that he was nevertheless acting as a reasonable person. On the contrary, Roy testified that his speed was not in excess of 55 miles per hour and that after he had passed the other vehicles he returned to his lane and the collision, in fact, occurred in his lane.

If the defendants considered the *Barnum* exception to be involved, they had an obligation to advise the trial court of their position by requesting an instruction. The trial court had no obligation to prepare an instruction incorporating a theory of defense not raised by defendants.[4]

The trial court did not err in instructing that a violation of a motor vehicle statute is negligence as a matter of law.

Defendants also contend that the court erred in instructing the jury that violation of the 55 miles per hour speed limit constitutes negligence as a matter of law. Defendants' only argument on appeal is that the 55 miles per hour speed limit is "solely a fuel conservation measure and has nothing to do with safety * * *." The exception taken to the court's instruction at trial, however, was based on the argument that the 55 mile

---

[4]We note that in *Woosley v. Dunning,* 268 Or 233, 520 P2d 340 (1974), the defendant requested an instruction on the *Barnum* exception and assigned as error the failure of the court to give the instruction. Also, in *Pac. N.W. Bell v. Century Home,* 267 Or 46, 51, 514 P2d 874 (1973), we noted that the *Barnum* rule was not raised at trial or a finding requested and therefore would not be considered on appeal.

per hour speed limit was not in effect at the time of the accident.[5] Under these circumstances, we do not reach the merits of the issues raised. It is well settled that this court will not consider errors on appeal unless the exception taken at trial sufficiently informs the trial court of the nature of the alleged error. *Weitzel v. Wingard,* 274 Or 185, 546 P2d 121 (1976). Nor will we consider theories not briefed or argued on appeal. *Whitehead v. Montgomery Ward & Co., Inc.,* 194 Or 106, 239 P2d 226 (1951). Defendants, having abandoned on appeal the ground for their exception made at trial, and not having raised at trial the ground for their exception on appeal, have thereby waived any error in the instruction at issue.

The next assignment of error is the trial court's exclusion of evidence that residents of Camas Valley frequently made "pickups" and deliveries for the Laccoarces when they made personal trips to Roseburg and that the Laccoarces did the same for them. Defendants claim that this "custom" evidence should have been admitted as tending to show that Roy Laccoarce was not acting as an employee at the time of the accident. We find no error in the trial court's exclusion of this evidence. The fact that *other parties* may have *occasionally* performed services for the Laccoarces gratuitously, and vice versa, has little bearing on whether or not Roy Laccoarce was acting as an employee at the time of the accident. This is not a situation in which an invariable business custom is sought to be proved. *Cf., McMillan v. Montgomery et al,* 121 Or 28, 253 P 879 (1927) ("invariable custom and practice"). Moreover, even if this evidence were

---

[5]The exception appears in the record as follows:

"MR. COWLING: I take exception to the Court instructing the jury in the event they found Roy's driving to be in excess of the 55 miles an hour that would be negligence as a mandatory matter * * *.

"THE COURT: I don't understand the point of your exception.

"MR. COWLING: All right. Well, let me ask, I'm not sure when the mandatory 55 miles an hour became effective.

"THE COURT: You may have that exception if that's the point.

"MR. COWLING: That's the only basis."

[ 659 ]

considered remotely relevant to the question of agency, the trial court could have determined that the probative value of the evidence was outweighed by "the risk of waste of time and confusion of issues," *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 508, 509 P2d 1199 (1973), *quoting* McCormick on Evidence 470, § 198 (2d ed 1972), particularly in light of the fact that the offered evidence would simply have gone to corroborate testimony that was in fact admitted.[6] As McCormick observes, the "balancing of intangibles" in the relevancy area "* * * is so much a matter where wise judges in particular situations may differ that a leeway of discretion is generally recognized." McCormick, supra at 440, quoted with approval in *Krause v. Eugene Dodge, Inc.,* supra at 508. On the facts of this case, we cannot say that the court abused its discretion.

The next three assignments of error all relate to a "covenant not to execute" entered into by Roy Laccoarce and plaintiff.[7] Under the covenant, plaintiff

---

[6]The only purpose of the offered evidence was to corroborate the testimony by Roy's parents that he made the pickups and deliveries as a favor to them, rather than as an employee.

[7]The covenant not to execute reads as follows:

"Whereas William G. Stanfield has filed suit in the Circuit Court of the State of Oregon for the County of Douglas, William G. Stanfield, Plaintiff, vs. Roy A. Laccoarce, James T. Laccoarce, and Pauline Laccoarce, Defendants, Case No. 76-0111, seeking damages for an accident occurring on or about November 26, 1975, on Oregon Highway 42, in which William G. Stanfield was injured.

"Whereas Defendant, Roy A. Laccoarce, proposes to pay the sum of ten thousand dollars ($10,000.00) in exchange for the agreement of the Plaintiff, William G. Stanfield, not to execute against Defendant, Roy A. Laccoarce, his spouse or spouses, his heirs, executors, administrators, successors, and assigns on any judgment resulting from or in any way growing out of the accident of November 26, 1975, referred to herein, and to indemnify Defendant Roy A. Laccoarce, for any costs necessarily expended in resisting through appropriate legal means any executions of judgment in violation of a Covenant not to Execute;

"Now, therefore, in consideration of the payment of $10,000.00 by Defendant, Roy A. Laccoarce, received by Plaintiff, William G.

promised not to execute on any judgment he might obtain against Roy in exchange for the payment of $10,000 by Roy. The covenant, however, expressly reserved plaintiff's right to execute on any judgment obtained against Roy's parents.

██ Defendants contend that plaintiff's action against them is barred by the covenant not to execute, either on the theory that release of the servant constitutes release of the master or on the theory that the Laccoarces are third party beneficiaries of the contract between Roy Laccoarce and the plaintiff. We find both these arguments to be plainly inconsistent with our decision in *Cranford v. McNiece,* 252 Or 446, 450 P2d 529 (1969), where we held that a release of one

Stanfield, receipt of which being acknowledged by the signature of Plaintiff affixed hereto, Plaintiff William G. Stanfield, hereby agrees not to execute against Defendant, Roy A. Laccoarce, his spouse or spouses, his heirs, executors, administrators, successors, and assigns on any judgment resulting from or in any way growing out of the accident of November 26, 1975, referred to herein and to indemnify Defendant, Roy A. Laccoarce, for any costs necessarily expended in resisting through appropriate legal means, any executions of judgment in violation of this Covenant not to Execute.

"William G. Stanfield, however, specifically reserves the right to execute any judgment recovered in the above-referenced case against the Defendants James T. Laccoarce and Pauline Laccoarce, it being understood and agreed that this covenant shall not operate as a release or abandonment of Plaintiff's claim or cause of action against any Defendants named in said suit.

"It is further understood and agreed that said $10,000.00 received in consideration of this covenant is not in full satisfaction of Plaintiff's claim or cause of action, but rather that it represents only partial compensation for the injuries sustained by Plaintiff William G. Stanfield.

"The parties hereto agree that neither this covenant nor any references to this covenant shall be admitted as evidence or into evidence in the above-referenced legal proceeding.

"In the event a judgment is recovered in the above-referenced action naming Defendant Roy A. Laccoarce as a judgment debtor, Plaintiff William G. Stanfield shall execute any documents requested for the purpose of releasing Roy A. Laccoarce from the lien, liens or other burdens created thereby."

[ 661 ]

tortfeasor operates as a release of others only if the parties to the release intend it to have such an effect.[8] In the present case, the covenant provides that plaintiff "specifically reserves the right to execute any judgment recovered in the above-referenced case against the Defendants James T. Laccoarce and Pauline Laccoarce, it being understood and agreed that this covenant shall not operate as a release or abandonment of Plaintiff's claim or cause of action against any defendants named in said suit." The quoted passage demonstrates a clear intent on plaintiff's part to reserve his claim against defendants in spite of the release.[9]

Defendants seek to avoid the impact of the quoted language by arguing that to give effect to the intent of the parties will lead to "futile circuity of litigation." We cannot agree. The clear language of the covenant indicates that plaintiff is barred only from directly executing on his judgment against Roy Laccoarce, not that he must hold Roy Laccoarce harmless from any suit for indemnity by his parents.[10] Consequently, no "circuity of litigation" problem is presented.

[8] Although *Cranford v. McNiece,* 252 Or 446, 450 P2d 529 (1969), involved joint tortfeasors, both of whom were primarily liable for the tort, we see no reason for applying a different rule in cases where the liability on one party rests on the respondeat superior doctrine. *See Dworak v. Olson Construction Co.,* — Colo ——, 551 P2d 198 (1976); *Holve v. Draper,* 95 Idaho 193, 505 P2d 1265 (1973); *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.,* 57 Ill 2d 298, 312 NE2d 259 (1974); *Centala v. Navrude,* 45 Mich App 282, 206 NW2d 544 (1973).

[9] Defendants also argue that "the document is ambiguous and the trial court should have heard evidence of the parties' intentions before entering its peremptive orders." In light of the clear and express language of the covenant, it was not necessary for the trial court to hear evidence of the parties' intent, as we find that intent disclosed on the face of the document. *See also,* n. 11, infra.

[10] The only clause defendants cite in support of their contention reads:

"In the event a judgment is recovered *in the above-referenced action* naming Defendant Roy A. Laccoarce as a judgment debtor, Plaintiff William G. Stanfield shall execute any documents requested for the purpose of releasing Roy A. Laccoarce from the lien, liens or other burdens created thereby." (Emphasis added.)

We therefore hold that plaintiff's action against defendants is not barred by the covenant between plaintiff and Roy.[11]

■ The remaining assignments of error relate to evidence of plaintiff's damages. Defendants contend that the court erred in admitting certain medical records relating to plaintiff's injuries and that it erred in excluding evidence that plaintiff was receiving disability payments and social security benefits at the time of trial.

After the accident, plaintiff underwent psychological testing to determine whether he had suffered brain damage as a result of the accident. The psychologist who was in charge of this testing testified as a witness at trial. The trial court, over defendants' objection, admitted into evidence the reports on which plaintiff's psychologist based his testimony.

These reports related to standardized tests that were administered by technicians under the supervision of plaintiff's psychologist. The psychologist checked over the scoring done by the technicians and described the reports as "business records" that he kept in his lab. Defendants claim the reports were hearsay and that the trial court erred in admitting them into evidence. The principal objection urged by defendants is that the tests "were not administered in

---

The "above-referenced action" is the present action in which William G. Stanfield is the plaintiff. By no stretch of the imagination can this clause be read to require plaintiff to hold Roy Laccoarce harmless in an action by his parents for indemnity.

Defendants cite *Holmstead v. Abbot G.M. Diesel, Inc.,* 27 Utah 2d 109, 493 P2d 625 (1972), in support of their theory with respect to the covenant. We find the dissenting opinion in that case to contain the better reasoning.

[11] In view of our disposition of this issue, we need not consider what effect ORS 18.455, which pertains to covenants not to sue, has on this case.

a purely mechanical way" but included "value judgments" made by the technicians.

We hold that the reports were properly admitted under the Uniform Business Records as Evidence Act, ORS 41.690, which provides:

> "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

In *Mayor v. Dowsett,* 240 Or 196, 400 P2d 234 (1965), we applied this statute to hospital records, noting that the statute should be "liberally interpreted so as to do away with the anachronistic rules which gave rise to its need and at which it was aimed." *Id.* at 228, *quoting Palmer v. Hoffman,* 318 US 109, 63 S Ct 477, 87 LEd 645, 144 ALR 719 (1943). We have also observed that the statute vests considerable discretion in the trial judge concerning admissibility. *Cascade Lbr. Terminal v. Cvitanovich,* 215 Or 111, 332 P2d 1061 (1958). We do not believe defendants in the present case have demonstrated an abuse of discretion on the part of the trial judge.

The fact that the records contained "value judgments" by the administering technicians does not by itself make the records inadmissible, but merely is one fact that the trial court should consider in deciding whether the probative value of the evidence is outweighed by the possibility of prejudice to the objecting party. In the present case, defendants had an opportunity to cross examine the psychologist who was in charge of the testing procedure, and defendants have made no showing that they were prejudiced by their

inability to cross examine the technicians who administered the tests.[12] Consequently, we find no abuse of discretion by the trial judge.[13]

■ Defendants' final contention is that the court erred in excluding evidence of plaintiff's "collateral source" income. As a general rule, the fact that a plaintiff in a personal injury case is receiving insurance or disability payments and the like is not admissible in mitigation of damages. *Cary v. Burris,* 169 Or 24, 127 P2d 126 (1942); Maxwell, *The Collateral Source Rule in the American Law of Damages,* 46 Minn L Rev 669 (1962); Annot., 75 ALR2d 885 (1961).[14] Defendants, however, claim that plaintiff "opened up" the subject by testifying about some of his collateral benefits, and that consequently defendants should have been allowed to elicit testimony from plaintiff about his remaining benefits.

The issue arose initially during defense counsel's cross-examination of plaintiff when counsel asked if plaintiff had gone "on retirement" with his former employer. Plaintiff's counsel objected on the basis of the collateral source rule. After the jury was dismissed, however, plaintiff's counsel withdrew the

---

[12]Defendants' reliance on *Streight v. Conroy,* 279 Or 289, 566 P2d 1198 (1977), is misplaced. In *Streight* we held that the trial court did not abuse its discretion when it refused to permit plaintiff's treating physician to read into the record verbatim another doctor's report concerning the results of a discogram. We noted that the discogram is a "controversial procedure" and that plaintiff "offered no evidence explaining the difficulty or complexity of the test or its interpretation." 279 Or at 295. In the present case, the technicians who administered the tests worked under the supervision of plaintiff's psychologist, and the tests were described as "highly standardized procedures."

[13]Since the test recorde were properly admitted, it follows that there was an adequate foundation for the testimony of plaintiff's psychologist.

[14]In *Dickson v. Hollinger,* 262 Or 113, 115 n. 1, 496 P2d 912 (1972), we noted the growing criticism of the collateral source rule. Defendants, however, have not asked that we re-examine the merits of the rule in the present case. For a discussion of the debate over the collateral source rule, *see* D. Dobbs, Remedies 584-87 (1973).

objection. Plaintiff's counsel explained to the court that

> "* * * the question has been asked and I'm afraid they [the jurors] are going to draw an inference from that, from my objection that the man is getting more than he is, so I would rather have him go ahead and answer to show exactly what his retirement benefits are without waiving any objection we have to any other collateral source evidence, and we would want to limit it at least to this point, to the one particular question that Mr. Cowling [defense counsel] has already asked * * *."

When the jury returned, the following exchange occurred between defense counsel and plaintiff:

> "Q — Okay. Now, did you tell Dr. Norris-Pearce that in April of '77 that you were going on retirement at your company?
>
> "A — I might have told him that I might be if I couldn't go back to work the company would have to terminate me and go into some sort of disability retirement or retirement which I have done so.
>
> "Q — I see, and you did that in April of '77?
>
> "A — Yes, sir, effective April 1."

The following then occurred on re-direct examination by plaintiff's counsel:

> "Q — Now, did you say that your company placed you on retirement on April 1, 1977?
>
> "A — Yes, sir.
>
> "Q — What kind of retirement was that?
>
> "A — It's — — it's a disability retirement and I think that's what they term it.
>
> "Q — Well, is that the same retirement that you would have had if you would have continued working there a normal period had it not been for the accident?
>
> "A — No, sir, it isn't.
>
> "Q — Had it not been for the accident when would you have expected to have retired from the company?
>
> "A — At the age of 65.
>
> "Q — What benefits, retirement benefits are you receiving from the company?
>
> "A — I'm receiving a reduced benefit of — because of my termination and retirement, disability retirement.

[ 666 ]

"Q — In what amount?

"A — Well, I — I get sixty, sixty-five dollars I think a month.

"Q — Sixty-five dollars a month?

"A — On one, and then there's from the former (Pause) company before McDonald Douglas merged, there's a small amount of $15.00 a month.

"Q — So altogether you are getting $80.00 a month?

"A — Somewhere around there, yes.

"Q — Now, what kind of retirement benefits would you be entitled to had you continued to work until age 65?

"A — If I would have been able to continue my retirement benefits would have accumulated, accumulative basis and depending upon my — my salary as it — as it increases I would have gotten several hundred dollars a month. The exact amount I can't recall."

On re-cross examination, counsel for defendants then sought to show that in addition to the $80 per month in retirement benefits, plaintiff also was receiving another $700 per month in insurance and social security payments. The trial court sustained plaintiff's objection to this offer of proof.

Defendants contend that they should have been allowed to make their offer of proof under any one of three separate statutes.[15] It is not clear to us that defendant's reading of these statutes is correct. We

[15]ORS 41.880: "When part of an act, declaration, conversation or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

ORS 44.370: "A witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character or motives, or by contradictory evidence. Where the trial is by the jury, they are the exclusive judges of his credibility."

ORS 45.570: "The adverse party may cross-examine the witness as to any matter stated in his direct examination, or connected therewith, and in so doing may put leading questions; but if he examines him as to other matters, the examination is subject to the same rules as a direct examination."

need not decide the issue, however, because we hold that any possible error by the trial court was "invited error" in at least two respects. First, defendants' counsel initiated discussion of plaintiff's collateral source income when he improperly asked plaintiff if he had "gone on retirement." Secondly, counsel made no objection to plaintiff's testimony as to the amount of his retirement benefits, but instead sought to introduce more inadmissible evidence to "explain" plaintiff's testimony.

In *Richmond v. Fields Chevrolet Co.,* 261 Or 186, 493 P2d 154 (1972), this court considered a problem similar to that presented in the case at bar. Counsel for both sides had mentioned facts in their opening statements that were inadmissible and both questioned plaintiff about the same facts. On appeal, defendant assigned as error the introduction of the evidence in question. We said:

> "It would appear to us, from the state of the record, that neither party is now in a position to complain about the admission into evidence of the irrelevant and prejudicial testimony * * *. Both parties shared the responsibility in submitting this testimony in the presence of the jury." 261 Or at 203-04.

We find the *Richmond* reasoning to be persuasive in the case at bar. Having initiated an inquiry in an area where no inquiry should have been made, defendants cannot now be heard to complain because that inquiry was limited by the trial court. Consequently, no error was committed in excluding the evidence in question.

For these reasons, we hold that no error was committed by the court during the course of trial. The judgment is affirmed.

Affirmed.