No. 57,700

MARY F. TICE, *Appellant*, v. GEORGIA L. EBELING, as executrix of the Estate of HARRY A. EBELING, deceased, and GENERAL MOTORS CORPORATION, *et al., Appellees.*

(715 P.2d 397)

Opinion filed February 21, 1986.

*Judy A. Pope*, of Dickson and Pope, P.A., of Topeka, argued the cause and was on the briefs for appellant.

*John A. Bausch*, of Ascough, Bausch, Eschmann, P.A., of Topeka, argued the cause and was on the briefs for appellee, Georgia L. Ebeling.

*Donald Patterson*, of Fisher, Patterson, Sayler and Smith, of Topeka, argued the cause and was on the brief for appellee, General Motors Corporation.

The opinion of the court was delivered by

LOCKETT, J.: This action arose when Harry A. Ebeling's pickup truck struck the rear of a six-passenger automobile in which the plaintiff, Mary F. Tice, was a passenger. Tice alleged that the driver of the pickup truck, Ebeling, was negligent, and that General Motors Corporation (GM), the manufacturer of the Tice vehicle, was also negligent for failing to provide a head restraint for the front center seat of the six-passenger automobile. At the close of the plaintiff's evidence, the trial judge sustained GM's motion for a directed verdict. After the case was submitted, the jury attributed 100 per cent of the fault to Ebeling and awarded the plaintiff $9,100 as damages. Plaintiff appeals the trial court's directed verdict for GM and, in addition, claims that the damage

award was inadequate as a matter of law and contrary to the evidence.

On March 14, 1981, plaintiff was a passenger in a 1981 Oldsmobile Cutlass Supreme Brougham driven by her husband, Richard Tice. Richard Tice had worked as a car salesman since 1970. The automobile had been issued to Tice by his employer. It was equipped with a bench front seat. Head restraints were provided for the driver and the right front passenger. The center front seating position had a lower seat back than the other two front positions and had no head restraint. Mrs. Tice was seated in the center front position. Her husband was seated on her left, and her daughter, Sheri Bundy, was seated on her right. Two of plaintiff's grandsons were seated in the back seat.

Tice was driving north on a Lawrence street toward a stop light. He stopped for a red light and had been sitting there approximately 15 seconds when his vehicle was struck from behind by a pickup driven by the defendant, Harry A. Ebeling, since deceased. There was evidence at trial that Ebeling had been drinking and taking prescription medication prior to the accident. Ebeling pleaded guilty to a charge of reckless driving in Lawrence Municipal Court.

The case was tried to a jury of eleven. The trial court, at the close of plaintiff's case, sustained GM's motion for directed verdict pursuant to K.S.A. 60-250. Thereafter, evidence was received on behalf of the remaining defendant, Ebeling. The case was submitted to the jury, which returned a verdict attributing 100 per cent of the fault to Ebeling and awarding Tice damages in the amount of $9,100.

The plaintiff appeals from the court's directed verdict for GM, and from the jury verdict finding that the plaintiff sustained only $9,100 in damages.

Because the judge sustained GM's motion for a directed verdict, the verdict form submitted by the judge to the jury did not show GM as a party whose fault should be compared with that of the drivers of the two vehicles involved in the accident. Tice contends that because GM was originally a party to the action, the judge, by sustaining GM's motion for a directed verdict, confused the jury's determination of Tice's damages. Tice does not claim the court's action resulted in a judgment against an insolvent defendant which would deprive her of collecting the judgment, rather that the jury was confused by hearing the

plaintiff's evidence against GM but not being allowed to determine whether GM was at fault. Under comparative negligence, the jury had to allot fault between the two remaining parties.

GM contends that a finding of 100 per cent fault on the part of the defendant Ebeling precludes any further action against GM by Tice. It claims that if the judgment against Ebeling is valid, plaintiff has received a judgment of 100 per cent of her damages and is entitled to no more, and, therefore, any mistake in granting a directed verdict in favor of GM is inconsequential and harmless error as to Tice.

GM bases its argument on *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 634 P.2d 1127 (1981). In that case, Albertson, the plaintiff, and Travis, the defendant, were involved in a collision. Albertson sued Travis, and the jury returned a verdict attributing 40 per cent of the fault to Albertson and 60 per cent to Travis. Albertson then filed suit in federal court against Volkswagen, manufacturer of the van Albertson was driving at the time of the collision. Volkswagen replied, contending that the rules relating to comparative fault barred the suit against it. The case came to us on a question certified by the federal court. This court said that Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. It held that, under the doctrine of comparative fault, all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escaped liability.

The present case can be distinguished from *Albertson.* In *Albertson,* the fault of Volkswagen was not considered because the corporation was not joined as a defendant in the state court action. In the present case, GM was a party to the action, and the plaintiff did not attempt to sue GM in a separate action. In addition, the plaintiff received all of the damages to which the jury determined she was entitled, despite the fact that the court ordered a directed verdict for GM.

The intent and purpose of the legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages, even though one or more of the parties cannot be joined formally as a litigant or be held legally

responsible for his or her proportionate fault. *Teepak, Inc. v. Learned,* 237 Kan. 320, 699 P.2d 35 (1985). The concept of joint and several liability between joint tortfeasors which previously existed in this state no longer applies in comparative negligence actions. The individual liability of each defendant for payment of damages is to be based on proportionate fault, and contribution among joint judgment debtors is no longer needed in such cases because separate individual judgments are to be rendered. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978).

Ebeling's estate neither contests the judge's granting of GM's motion for a directed verdict nor claims that the damages award to the plaintiff is excessive.

Where a trial judge has dismissed the other alleged defendants from an action and the jury apportions 100 per cent of the fault against the remaining defendant and awards proper damages, the plaintiff has been awarded full compensation for the injuries claimed against all the alleged defendants, regardless of their proportionate fault, if no prejudice results from that dismissal. The granting of a new trial under such circumstances would serve no useful purpose.

In the present case, it is necessary to determine whether the jury's award of damages to compensate the plaintiff for her injuries was proper. If the award of damages to Tice was proper, there is no reason to grant plaintiff a new trial.

The plaintiff contends (1) that the amount of damages awarded for medical expenses was inadequate in light of the testimony of the medical experts and (2) that the award of zero damages for future medical expenses was contrary to the evidence.

A new trial may be granted when the amount of damages granted is inadequate in the light of evidence as to the severity, duration, extent and permanency of the injuries. *Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P.2d 60 (1961).

Mrs. Tice testified that she had incurred the following medical expenses which total $6,750.47:

Ransom Memorial Hospital, $1,450.25; Ottawa Medical Center, $747; prescriptions, $197.51; Dr. Eaton, $182; Radiological Professional Services, $18; Douglas County Ambulance, $56; Dr. Striebinger, $55; Dr. Weinstein, $212.40; Research Medical Center, $95; Dr. McKelvey, $569; Lawrence Memorial, $109.70; Dr. Shefer, $135; Olathe Community

Hospital, $8; Dr. Shelton, $245; Dr. Whitaker, $80; Dr. Amaro, $2,575.61; Dr. Wertzberger, $15.

The plaintiff called as her medical witnesses Dr. Guy Edward. Counselman, a chiropractic doctor; Dr. John Amaro, a chiropractic doctor; Dr. Don McKelvey, a chiropractic doctor; and Dr. Steve Shelton, a psychiatrist. Their testimony indicated that to the best of their medical knowledge Mrs. Tice was suffering permanent disability as a result of the automobile accident and that she would require future medical treatment and incur additional medical expenses because of her continuing problem.

The defendant presented as medical witnesses Dr. Larry James Matney, a chiropractic doctor; Dr. Harold Joe Pryor, a medical doctor subspecializing in electromyography; Dr. Ronald Dean Oelschlager, a radiologist; Dr. Joseph Gendel, an orthopedic surgeon; Dr. Richard C. Tozer, a neurosurgeon; and Dr. Charles L. Weinstein, a medical neurologist. The defendants' medical witnesses testified that to the best of their medical knowledge Mrs. Tice had normal motor function, no atrophy of the muscles, no neurological, brain, spinal cord or peripheral nerve problems, no evidence of soft-tissue or ligamentous damage or any evidence of fracture, dislocation or injury to the neck and no abnormality, disease or injury to the nerves. They testified that they believed Mrs. Tice's problems were due to tension.

When a verdict is attacked on the ground it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful party below, will support the verdict this court should not intervene. *Toumberlin v. Haas,* 236 Kan. 138, Syl. ¶ 5, 689 P.2d 808 (1984).

Here the evidence does not support the plaintiff's argument that the jury acted out of passion and prejudice. The award was not contrary to the evidence and does not constitute reversible error.

The plaintiff next contends that the award for pain and suffering was inadequate as a matter of law and that the award of zero damages for future pain and suffering was contrary to the evidence and constituted reversible error.

Pain and suffering have no known dimensions, mathematical

or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in such amount as reasonable persons estimate to be fair compensation for the injuries suffered. The law has entrusted the administration of the criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence. *Kirk v. Beachner Construction Co., Inc.*, 214 Kan. 733, 522 P.2d 176 (1974).

Following the trial, the plaintiff's counsel discussed the damages award with the jury foreman, John R. Miller, Sr. Miller said that the $9,100 award consisted of $4,000 for medical expenses, $3,500 for pain and suffering and $1,600 for lost wages. No damages were awarded for future medical expenses, future pain and suffering or loss of consortium.

The plaintiff does not raise an issue of jury misconduct but contends that the $3,500 for pain and suffering was inadequate, because the evidence showed that Mrs. Tice suffered extensive pain as a result of the accident. Dr. Amaro testified that Mrs. Tice was suffering from severe headaches, pain in the right lower neck and right arm and some numbness.

An appellate court must be cautious when requested to substitute its judgment for that of the trier of fact in the matter of assessing damages and must not do so unless the verdict shocks the conscience or indicates passion and prejudice on the part of any trier of fact. *McGuire v. Sifers*, 235 Kan. 368, 681 P.2d 1025 (1984). Generally, findings of fact and a general verdict of the jury based on conflicting evidence, when approved by the trial court, will not be disturbed on appellate review. *Purvis v. Brenner*, 189 Kan. 369, 369 P.2d 253 (1962).

In the present case, there was conflicting testimony as to whether Mrs. Tice was suffering pain from her injury. The defendant's medical experts testified that they could find no physical reasons to substantiate her claims of pain and suffering. The jury weighed the conflicting evidence, then made a determination and awarded some damages for pain and suffering. If plaintiff's claim that the jury made no award for future pain and suffering is correct, then the jury made this decision after hearing the conflicting testimony and did not deem it necessary to make

such an award. This was a jury decision and should not be disturbed on appeal.

The plaintiff next contends that the jury's failure to make an award for loss of consortium, in spite of plaintiff's uncontradicted and unimpeached testimony, demonstrates passion and prejudice and warrants a new trial.

Kansas recognizes a legal cause of action for loss of consortium. When a married person sustains personal injuries causing the loss or impairment of his or her ability to perform services, any recovery is based on the loss or impairment of his or her ability to perform services in the household and in the discharge of his or her domestic duties. K.S.A. 23-205. Domestic duties means all the benefits that accrue as the result of the conjugal relation, such as society, comfort, aid, assistance or any other act that tends to make wedded life worthwhile. *Clark v. Southwestern Greyhound Lines,* 144 Kan. 344, 58 P.2d 1128 (1936).

Dr. McKelvey testified that he had advised Mrs. Tice to stay away from stressful situations and not to participate in such physical activities as vacuuming, scrubbing or overhead work. The plaintiff testified she was no longer able to perform housework or participate in leisure activities, that she suffered from headaches and pain and, therefore, was unable to socialize as she had previously. Her husband testified that the quality of their marital relations had suffered as a result of the accident and that they rarely had sexual relations following the accident, because of the pain and stress Mrs. Tice was suffering as a result of the accident.

Plaintiff claims the jury disregarded the uncontradicted and unimpeached testimony of Mrs. Tice's impaired abilities to perform services relating to her domestic and household duties and returned a verdict directly opposite to the evidence. She contends that an inadequate verdict in the face of uncontroverted testimony indicates passion and prejudice and requires the granting of a new trial.

There is a split of authority as to whether a new trial should be granted for loss of consortium where a jury returns a verdict of no damages despite the uncontroverted testimony by the husband and wife of the alleged impairment. Some jurisdictions hold that a verdict for no damages in such a case requires a new trial. *Smith v. Covell,* 100 Cal. App. 3d 947, 161 Cal. Rptr. 377 (1980); *Manders v. Pulice,* 102 Ill. App. 2d 468, 242 N.E.2d 617 (1968),

*aff'd* 44 Ill. 2d 511, 256 N.E.2d 330 (1970); *Albritton v. State Farm Mut. Auto. Ins. Co.*, 382 So. 2d 1267 (Fla. Dist. App. 1980). Other jurisdictions have determined that the testimony of husband and wife in a loss of consortium case is so uniquely irrefutable as to permit a jury the latitude of a negative finding. See *Schmitz v. Yant*, 242 Or. 308, 318, 409 P.2d 346 (1965), and *Streight v. Conroy*, 279 Or. 289, 291, 566 P.2d 1198 (1977).

In *Briscoe v. Ehrlich,* 9 Kan. App. 2d 191, 674 P.2d 1064, *rev. denied* 235 Kan. 1041 (1984), the Court of Appeals considered whether a jury decision to award no damages for loss of consortium required a new trial where there was undisputed evidence of such loss. The Court of Appeals followed the reasoning of the Oregon court in *Streight v. Conroy*, 279 Or. at 291, where the court determined that the relations between husband and wife brought into question by an action for loss of consortium, whether relating to respective hours worked in a family business or other conjugal association, are of so intimate a character that the question of damages almost always is one where a jury may properly test the credibility of the witnesses. Not only is the availability of evidence to contradict almost nil, but plaintiff has a direct interest in the outcome and her husband has a material, indirect interest as well.

We agree with the holding of the Court of Appeals. Where the only testimony regarding the loss of consortium is the uncontradicted and unimpeached testimony of the husband and the wife, evidence to contradict their testimony is usually unavailable. In such a case, a jury may properly test the credibility of such witnesses and return a verdict for zero damages. Here, there was testimony in addition to that of the husband and wife. Dr. McKelvey testified that he had advised Mrs. Tice not to engage in physical household chores because of impairment which resulted from the accident.

During the trial the plaintiff admitted that from 1975 to 1977, she had been treated 60 times by Dr. Matney for complaints similar to those she claimed resulted from the 1981 accident. Mrs. Tice testified that the 1975-77 problems did not affect her ability to function in any manner. Under such circumstances, a jury may test the credibility of such witnesses and return a verdict for zero damages in spite of the uncontradicted and unimpeached testimony of the witnesses. The verdict of the jury

awarding no damages for loss of consortium does not justify the granting of a new trial to the plaintiff.

Since we have determined that the jury's award of damages was correct under the evidence in this case, we need not discuss whether the trial judge erred by granting GM's motion for a directed verdict at the close of the plaintiff's evidence. It is noted that since the accident in this action occurred on March 14, 1981, plaintiff's claim against GM would have been determined under our prior case law. On July 1, 1981, the Kansas product liability act (Act), K.S.A. 60-3301 *et seq.*, became law. Product liability claims after the effective date of the Act are governed by the Act.

The plaintiff contends that the trial court committed reversible error by refusing to allow the plaintiff's attorney to cross-examine Dr. Tozer regarding his hostile feelings toward plaintiff's counsel.

According to the plaintiff, Dr. Tozer's hostility was the result of a dispute over the amount of a fee the doctor charged for being deposed by the plaintiff's attorney. The plaintiff had requested the defendant's counsel to allow a deposition of Dr. Tozer. Dr. Tozer said he would charge $750 for the deposition. Dr. Tozer was subpoenaed by the plaintiff's attorney and, at taking of the deposition, he testified that his normal charge was $100 an hour. The deposition lasted an hour and 15 minutes. The plaintiff's attorney sent the doctor a letter stating that, if the doctor would present a bill for his travel, preparation and time at the deposition at the same hourly rate he was charging the defendant, the plaintiff would pay that amount. Dr. Tozer never responded.

Plaintiff's attorney stated that he met Dr. Tozer during a recess at trial and the following conversation took place:

" 'Well, Doctor, did you get my letter?' And he said, 'Yes, and you never intended to pay me, and that was a shitty thing to do, and I hope you lose. I hope you lose your damn shirt on this case.' That was this morning, here in the courtroom."

Defendant's counsel requested the court to direct the plaintiff's counsel not to make any inquiry into the dispute over fees. The court ruled that plaintiff's counsel should not cross-examine on this issue unless Dr. Tozer testified differently from the neurological report he prepared or from any statements Dr. Tozer made in the deposition. Plaintiff's counsel replied:

"I voluntarily will say I am not going to bring that up until he testifies differently than he did in his deposition or his report."

The plaintiff contends that during the trial Dr. Tozer's testimony did vary from statements made in the deposition. She contends that when Dr. Tozer was deposed, he stated that it was his belief plaintiff's symptoms were not monetarily motivated. At trial, Dr. Tozer testified that he believed her symptoms were monetarily motivated.

Following that testimony at trial, the plaintiff's attorney began to question Dr. Tozer about the fees he had charged. The defense counsel interrupted. The attorneys approached the bench. Plaintiff's attorney claimed that the witness had contradicted his prior statements. The judge offered to recess the trial and check the doctor's deposition to determine whether Dr. Tozer had changed his testimony. Plaintiff's attorney stated he did not want to check the deposition and was ready to proceed. He believed that the doctor had indicated his feelings against the plaintiff to the jury.

The plaintiff's counsel did not object to the court's ruling. As a general rule, anything which savors of acquiescence in a judgment cuts off the right of appellate review. *Vap v. Diamond Oil Producers, Inc.,* 9 Kan. App. 2d 58, Syl. ¶ 2, 671 P.2d 1126 (1983); *Anderson v. Carder,* 159 Kan. 1, 5, 150 P.2d 754 (1944). The gist of acquiescence sufficient to cut off a right to appeal is voluntary compliance with the judgment. *McDaniel v. Jones,* 235 Kan. 93, 102, 679 P.2d 682 (1984).

Mrs. Tice's attorney did not accept the trial judge's offer to check the doctor's deposition to determine if Dr. Tozer's testimony varied from his neurological report or his deposition. Appellate review is not available where there has been acquiescence and a failure to object to actions at trial.

The decision of the trial court is affirmed.