Argued and submitted October 29, 1982, reversed and
remanded January 12, reconsideration denied March 11,
petition for review denied May 3, 1983 (294 Or 792)

# THOMAS,
*Appellant,*

*v.*

# PARKER REFRIGERATED SERVICES, INC.,
d/b/a/ Parker Refrigerator Trucking,
*Respondent.*

## (No. A8007-04029, CA A22749)

657 P2d 692

Elliott Lynn, Beaverton, argued the cause for appellant. With him on the brief was Elizabeth A. Normand, Beaverton.

Margaret H. Leek Lieberan, Portland, argued the cause for respondent. With her on the brief was Mitchell, Lang & Smith, Portland.

Before Richardson, Presiding Judge, Thornton, Senior Judge and Young, Judge.

THORNTON, S. J.

## THORNTON, S. J.

Plaintiff appeals from the trial court's dismissal of one of her two counts against defendant and from the court's order allowing defendant's motion for judgment notwithstanding the verdict on the other count after the jury had returned its verdict in plaintiff's favor. The court erred in both respects and we reverse.

According to plaintiff, on September 3, 1979, between 9 p.m. and 10 p.m., she was driving a pickup north from Harrisburg on the Interstate 5 freeway. Her brother was also driving north in his car just ahead of her. Plaintiff and her fiance saw what they identified as a Parker Refrigerated Services truck pass a van on the right hand shoulder and "just about blowed it off the road." The driver of the van nearly lost control. Later, plaintiff's brother moved into the left lane and attempted to pass the truck, which had slowed going up a hill. The truck switched lanes and "just pushed him off the side of the road," nearly causing him to lose control of his car. Plaintiff's brother was able to speed up and pass the truck on the left shoulder. Shortly after, the Parker truck began to follow plaintiff's pickup. The truck was traveling in excess of the posted speed limit. The truck driver turned its spotlight on the pickup's back window so that the light reflected in the rearview mirror. The truck then also began to weave from one lane to the other. The truck came within a foot of the pickup's tailgate, backing off and coming forward again several times until it hit the rear of the pickup lightly. The truck then dropped back about two feet and came up again to hit the pickup with greater force. Plaintiff left the freeway at a Salem exit, and the truck proceeded north on Interstate 5.

Plaintiff called the police. She told the officer that a Parker Refrigerated Services truck had hit her.[1] She identified the truck by its colors and writing on the truck and trailer. The investigating officer described the damage to plaintiff's pickup as minimal. Another motorist left the freeway at the Salem exit just after plaintiff. The motorist

---

[1] Although plaintiff and her husband testified that the truck hit plaintiff's pickup twice, the officer who investigated the incident testified that plaintiff reported the truck hit her pickup only once.

told the police that she had written down the license number of the truck which she thought had hit plaintiff's pickup. She stated that she did not see the actual collision. The license number that she gave the police officer could not be connected with any Parker truck. Although the police attempted to locate the described truck farther north on Interstate 5, they were unable to do so.

After the incident, plaintiff was treated for cervical and upper back strain. She did not return to work for several months. She testified that, although she no longer has any problems with her neck and shoulders, she has occasional severe headaches.

One of defendant's witnesses testified that she had searched the records of the company and was unable to identify any driver or truck that had been in the area of the accident on the night of September 3. Another employe, who was responsible for operations within the company, reviewed all the records and logs of its drivers. He stated that he was not able to identify any truck as being in the area of the incident at that time. No truck driver was ever identified or named as a defendant.

Plaintiff brought this action in two counts. First, she alleged that defendant, through its driver, drove its truck into plaintiff's vehicle due to the driver's negligence. Second, she alleged:

"* * * [T]he defendant corporation, through its driver committed the outrageous act of willfully, wantonly and maliciously operating its truck into the rear of this plaintiff's vehicle while the plaintiff's vehicle and the corporation's vehicle were traveling on the highway, causing this plaintiff personal injury as hereinafter set forth."

Under this second count, labeled "Outrageous Conduct," plaintiff sought compensatory as well as punitive damages.

Although the record is unclear, it appears that the trial court "questioned" plaintiff's second count before any evidence was offered on the ground that the acts alleged would not be within the scope of the driver's employment and that defendant could not be held vicariously liable. However, the court did not dismiss the second count on that ground until the close of the case. In any event, both

parties on appeal treat the trial court's action in dismissing the second count as being on the ground that the conduct alleged was intentional and outside the scope of employment and that defendant therefore could not be liable.

The only claim submitted to the jury was count one, alleging negligence of defendant's agent acting within the scope of the agent's employment. The jury was instructed that, in order to find for plaintiff, it would have to determine if the truck was owned by defendant and if defendant's employe was acting within the scope of his employment at the time of the accident. The jury returned a general verdict, finding that defendant was negligent and caused injury to plaintiff. It awarded plaintiff general damages of $5,500. After entry of the judgment, defendant successfully moved for a judgment notwithstanding the verdict, contending that the evidence showed that the truck driver involved was "clearly not negligent" and that plaintiff had failed to prove negligence.

■ Plaintiff first assigns error to the court's dismissal of count two. That the operation of the truck was done "wilfully, wantonly and maliciously" does not necessarily relieve defendant of vicarious liability. In *Newkirk v. Oregon-Wash. R.R. & Nav. Co.,* 128 Or 28, 37, 38, 273 P 707 (1929), and in *Cook v. Kinzua Pine Mills Co. et al,* 207 Or 34, 63, 293 P2d 717 (1956), the Supreme Court quoted with approval the following text:

> " ' "The rule laid down by earlier decisions both in England and in many of the United States is that the master is not liable for damages resulting from the wilful, wanton, or malicious acts of his servant unless done by his express direction or with his assent, although the act was committed within the line of the servant's duties. But now in almost all jurisdictions it is well settled that the master is liable for the wilful or malicious acts of the servant done in the course of his employment and within its scope, although the acts were not expressly ratified by the master or authorized by him. Such acts are imputable to the master under the doctrine of *respondeat superior,* and in accordance with general principles heretofore discussed the master will be liable, although the acts were in disobedience of express orders or instructions given by him, or although the particular act complained of may have been in excess of the servant's authority, and regardless of the motive or

intention of the servant. It has been held, however, that, if the nature of the act is such as to render it doubtful if the act comes within the scope of the servant's employment, the intention with which the act is done may be considered in determining its character." 39 C.J. 1292, § 1487.' * * *"

The issue in applying the doctrine of vicarious liability is not whether the employe's acts were "wilful" or "wanton" but whether the acts were done in the course and scope of the employe's employment.

In *Cook v. Kinzua Pine Mills Co. et al, supra,* the plaintiff sought damages arising out of a collision allegedly caused by the defendant's employe. Her complaint presented two counts. She alleged that she had parked her car on the road's shoulder and that the defendant, through its employe, had "carelessly, recklessly and negligently" driven its truck into the left side of her car, causing injuries. The allegations in the second count were substantially the same as those in the first, except that the plaintiff also alleged that at the time of the collision the defendant

" "* * * *[w]ith knowledge* of the presence of the plaintiff at said place, then and there *recklessly* and in a *wanton manner,* and with an *utter disregard* for the safety of plaintiff, drove, managed and operated said truck into and against the left door and side of plaintiff's automobile.' * * *" 207 Or at 40. (Emphasis theirs.)

There was a conflict in the testimony as to how the collision had occurred. The court stated:

"* * * [W]e hold that it was for the jury to say whether defendant driver was guilty of wanton misconduct. They were not bound under the evidence to find that he intended to hit and injure the plaintiff. We reject the defendants' contention that if the defendant was guilty of wanton misconduct he was necessarily acting outside the scope of his employment as a matter of law. * * *" 207 Or at 62.

Thus, even if the truck driver in the present case was guilty of "wilfully, wantonly, and maliciously" operating his truck, he would not necessarily have been acting outside the scope of his employment. Although the evidence as to how the collision occurred was not rebutted, the jury was not required to find that the truck driver had intended

to hit and injure plaintiff. Defendant attempts to distinguish *Cook* in its brief:

> "The case of *Cook v. Kinzua Pine Mills Co., et al.,* 207 Or. 34, 293 P.2d 717 (1956), relied upon by plaintiff, is easily distinguished from the case at bar. The evidence in *Cook* was that the accident occurred on a one lane, narrow logging road. The plaintiff did not allege the truck intentionally struck her car. The complaint merely stated the truckdriver carelessly, recklessly and negligently drove the truck. The facts of *Cook* clearly justified a finding that the driver was furthering his employer's purpose in his actions."

Although that may accurately reflect a distinction in pleading between *Cook* and this case, defendant apparently overlooks the portion of the plaintiff's complaint in *Cook* which alleged that the truck driver, with knowledge of the plaintiff's presence, recklessly and in a wanton manner in utter disregard for plaintiff's safety drove his truck into her parked car. Further, it is difficult to understand why, if the facts in *Cook* "clearly justified a finding that the driver was furthering his employer's purpose" if the employe *knowingly* drove into the plaintiff's car, in the present case the facts "clearly justify" the opposite conclusion.

■ Except in cases where only one reasonable conclusion can be drawn from the facts, it is a question of fact for the jury to determine whether an act committed by an employe is within the scope of employment. *Stanfield v. Laccoarce,* 284 Or 651, 588 P2d 1271 (1978); *Gossett v. Simonson,* 243 Or 16, 411 P2d 277 (1966); *Kowaleski v. Kowaleski,* 235 Or 454, 385 P2d 611 (1963). Although no general rule will determine in each case whether an employe is acting within the scope of employment, and each case must be decided on its own particular facts and circumstances, *Barry v. Oregon Trunk Railway,* 197 Or 246, 256, 253 P2d 260 (1953), guidelines from the Restatement (Second) of Agency § 228 (1958) have often been cited with approval:

> "(1) Conduct of a servant is within the scope of employment if, but only if:
>
> > "(a) it is of the kind he is employed to perform;

"(b) it occurs substantially within the authorized time and space limits;

"(c) it is actuated, at least in part, by a purpose to serve the master, and

"(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master."

*See, e.g., Stanfield v. Laccoarce, supra; Gossett v. Simonson, supra; Jones v. Herr,* 39 Or App 937, 594 P2d 410, *rev den* 287 Or 1 (1979).

The difficulty with the present case is that the employe allegedly responsible for the acts causing plaintiff's injuries did not testify. The jury could choose to believe any or all of plaintiff's version of the incident. From the evidence presented, however, a jury could reasonably conclude that: (a) the driver was hired by defendant to drive the refrigerator truck; (b) the driver was authorized to drive the truck on Interstate 5 at the time the incident took place;[2] (c) the driver's conduct in weaving in and out of traffic and driving in excess of the posted speed limit was motivated, at least in part, by the driver's desire to move the contents of the refrigerated truck swiftly; and (d) if the hitting of plaintiff's pickup was intentional, it caused minimal damage to the pickup and the hitting of a vehicle on the freeway by one of defendant's drivers was not "unexpectable" to defendant. Thus, a jury could find that the conduct involved was within the scope of the driver's employment. If the driver had been identified and had

---

[2] For example, although defendant denied it did business as "Parker Refrigerated Trucking," it admitted the following allegation of plaintiff's complaint:

"That at all times herein mentioned, Parker Refrigerated Service, Inc. doing business as Parker Refrigerator Trucking was and is now a corporation organized under and existing by the virtue of the laws of the State of Washington. That said corporation did generally engage in the transportation, pick-up and delivery of material requiring temperature control, and is generally engaged in the transportation of commercial products in the States of Washington and Oregon, and traverses the Interstate highways between those two states, as well as other states, and employes agents and truck drivers to operate the above mentioned motor vehicles, and said corporation did employ agents and truck drivers who were operating one or more of defendant's trucks within the course and scope of their employment at the time of the collision hereinafter referred to."

testified, some or all of the above conclusions might be foreclosed. However, under the circumstances of this case, the trial court erred in dismissing plaintiff's second count on the basis that, as a matter of law, the conduct involved was outside the scope of the driver's employment.

 Plaintiff also assigns as error the court's granting defendant's motion for judgment notwithstanding the verdict after the jury found defendant to be negligent. The motion was allowed on the ground that the evidence described an intentional act only and one that, as a matter of law, could not constitute negligence. In other words, defendant argues that no reasonable jury could have found defendant's driver to be negligent in hitting plaintiff's truck.

As noted above, the difficulty in the present case is that the driver allegedly responsible for the alleged acts did not testify. The determination of whether the conduct involved constituted negligence or an intentional tort depends on the driver's mental state, which necessarily could only be inferred. Whether conduct constitutes negligence is usually a question for the jury, even when the evidence in the case is uncontradicted, if different inferences or conclusions may be reasonably drawn from the evidence. *Oregon Auto. Ins. Co. v. Fitzwater,* 271 Or 249, 258, 531 P2d 894 (1975). The record must be viewed in the light most favorable to plaintiff, including all favorable inferences that may be drawn from the evidence. *Package Containers v. Directors,* 270 Or 845, 530 P2d 40 (1975). From the record, we cannot say as a matter of law that the driver was not negligent in causing plaintiff's injuries.

Reversed and remanded on the first count for entry of a judgment in conformity with the verdict; remanded for a trial on the second count.