CENTER FOR LEGAL STUDIES, INC.; et al., Plaintiffs,

v.

Ray LINDLEY; et al., Defendants.

No. CIV. 99–473–JO.

United States District Court, D. Oregon.

Aug. 18, 1999.

James L. Hiller, Hitt & Hiller, Portland, OR, Craig William Barber, Craig William Barber, P.C., Golden, CO, for Plaintiffs.

Cynthia A. Botsios, Department of Justice, Salem, OR, for Defendants.

### OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiffs Center for Legal Studies, Inc. ("CLS") and Scott Hatch, Director of CLS, bring this action against defendants Ray Lindley, Lin Fleming, David Young (both in his official capacity and individually), Oregon Department of Education ("ODE"), Oregon Office of Educational Support Services ("OESS"), State of Oregon, and John Does 1 through 9. Plaintiffs allege claims arising from the actions of ODE and OESS regarding CLS's licensure to operate a paralegal training program in Oregon.

Specifically, plaintiffs allege the following claims and damages: federal antitrust claims (treble damages), defamation and misrepresentation ($500,000), slander per se, interference with contractual relations ($500,000), negligence and negligence per se ($250,000), restraint of trade, slander, outrageous conduct, trademark disparagement ($500,000), violations of federally protected rights, violation of civil rights ($250,000), conspiracy to violate protected

rights, and unlawful trade practices. Plaintiffs also seek $900,000 in punitive damages, interest, and attorneys' fees.

The case is now before the court on defendants' motion for summary judgment (# 27). For the reasons explained below, defendants' motion is granted in its entirety.

## FACTUAL BACKGROUND

Plaintiffs contracted with Western Oregon University ("WOU") to provide a paralegal course at WOU during the fall of 1997 and the spring, summer, and fall of 1998. First Amended Complaint ("Complaint") ¶ 14. The tasks associated with providing the course were to be shared or allocated between WOU and CLS. Complaint ¶ 14; Memorandum in Support of Defendant's Motion for Summary Judgment ("MSJ"), Ex. 3, p. 3. With respect to advertising, CLS developed a flyer, approved by WOU, for the Paralegal Certificate Course, which contained the following statement: "This **Professional Certificate** establishes that an individual has achieved the level of professional knowledge and competency necessary to work within the legal field." MSJ, Ex. 5.

On September 25, 1997, defendant Young, who was the Administrator of the Office of Degree Authorization ("ODA") at the time, received a letter from Pioneer Pacific College ("PPC") raising concerns regarding the marketing of the WOU program as one for paralegal professional training that prepares the novice for work as a paralegal. Defendant's Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Reply"), Ex. 1, p. 1. Young investigated the course between September 19, 1997 and April 6, 1998 to determine whether CLS needed to be licensed to offer the training program in Oregon. Affidavit of David Young ("Young Aff.") ¶¶ 10–17.

As a result of that investigation, Young filed a formal complaint with ODE Specialist Lindley, and both the ODE and ODA corresponded with CLS to determine if an exemption could be crafted for CLS. Affidavit of Ray Lindley ("Lindley Aff.") ¶¶ 6–17; Young Aff. ¶¶ 10–17; MSJ, Exs. 2–4, 6–10; Affidavit of Scott Hatch ("Hatch Aff."), Exs. 6, 12, 13. These efforts failed, however, because CLS did not seek licensure and WOU did not seek to "sponsor" CLS and assume responsibility for the program. MSJ, Ex. 9; Affidavit of Michele Price ("Price Aff.") ¶ 13. Some efforts were made to bring the CLS course into compliance, including the development of a new flyer, Hatch Aff., Ex. 15, the distribution of a disclaimer to students, Hatch Aff. ¶ 26, and verification that all students were professionals before entering the course, Hatch Aff., Exs. 16, 18.

WOU terminated its agreement with CLS on June 18, 1998, effective August 2, 1998, after having offered the course three times for total revenue of $25,440, seventy percent ($17,808) of which went to plaintiffs. Price Aff. ¶¶ 12, 14. CLS notified Oregon of its intent to sue on May 5, 1998. Complaint ¶ 26.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to

the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

Plaintiffs' claims involve state tort claims as well as federal antitrust and civil rights claims. As discussed below, under the Oregon Tort Claims Act ("OTCA"), the state of Oregon is the only proper defendant for state tort claims, and the state is immune from suit in federal court under the Eleventh Amendment. Plaintiffs' federal claims also fail for the reasons explained below. I thus conclude that summary judgment in favor of defendants is appropriate.

### A. *State Tort Claims*

#### 1. *Oregon Tort Claims Act*

■ Plaintiffs bring a variety of tort claims against defendants, as noted above. The state argues that the OTCA substitutes the state as the only defendant in actions based on alleged torts of a public body or its employees, officers, and agents acting "within the scope of their employment or duties." *See* ORS 30.265. The OTCA's definition of a "public body" includes departments, agencies, boards, commissions, and political subdivisions of the state as well as intergovernmental organizations. *See* ORS 30.260(4). The statute thus covers all named defendants, including Lindley, Fleming, and Young, as long as they were acting within the scope of their employment or duties. Plaintiffs do not allege that defendants Lindley or Fleming were acting outside the scope of their employment. Thus, under the OTCA, the state is substituted as the only proper defendant in this suit against the ODE, OESS, and defendants Lindley and Fleming.

Plaintiffs do contend that defendant Young was not acting within the scope of his employment in his contact with CLS, arguing that Young, "on his own volition and motivated by his personal agenda, which was not related to the ODA, maliciously raised the claims that CLS was allegedly violating ORS 348.603." Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Response"), p. 7. This claim evidently is founded on plaintiffs' belief that Young had a relationship with PPC which motivated his investigation of CLS. Response, p. 7; Plaintiffs' Statement of Material Fact in Opposition to Defendants' Motion for Summary Judgment ("Response Facts") ¶ 10; Hatch Aff. ¶ 19. Plaintiffs further argue that under *Berry v. Dept. of General Services,* 141 Or.App. 225, 228, 917 P.2d 1070 (1996), defendant Young cannot gain automatic immunity via the OTCA based solely on the Attorney General's determination that the state is the only proper defendant.

■ In *Brungardt v. Barton,* 69 Or. App. 440, 443, 685 P.2d 1021 (1984), the Oregon Court of Appeals laid out the following considerations in analyzing whether a defendant was acting within the scope of his or her employment within the meaning of ORS 30.265(1):(a) whether the conduct was of the kind the defendant was hired to perform, (b) whether the conduct occurred within an "authorized time and space," and (c) whether the defendant was "motivated, at least in part, by a purpose to serve the employer." 69 Or.App. at 443, 685 P.2d 1021 (citing *Stanfield v. Laccoarce,* 284 Or. 651, 655, 588 P.2d 1271 (1978)). Summary judgment regarding whether conduct was within the scope of employment is "appropriate when only one reasonable conclusion can be drawn from the facts." *Id.* (citing *Stanfield,* 284 Or. at 655, 588 P.2d 1271; *Thomas v. Parker Refrigerated Services, Inc.,* 61 Or.App. 234, 240, 657 P.2d 692 (1983)) (affirming the trial court's grant of defendant's motion for summary judgment where, under the facts before the court, the excessive use of force was not necessarily outside the scope of employment since defendant was authorized to use force under some circumstances).

■ In support of the claim, plaintiffs offer little more than statements made in plaintiff Hatch's own affidavit. Indeed, the only other evidence cited by plaintiffs is a statement made at the end of a two-page letter from Young to WOU provost Betty Youngblood, asking, "Do you not agree that my relationship with officials of other schools is irrelevant?" Hatch Aff., Ex. 6, p. 2.

An analysis of the *Brungardt* factors in the circumstances presented here leaves no doubt that defendant Young's conduct in "raising the claims" against CLS fell within the scope of his employment. *Brungardt*, 69 Or.App. at 443, 685 P.2d 1021.

### a. Conduct of kind defendant was hired to perform

Young conducted an investigation upon receiving the complaint from PPC, contacted defendant Lindley, and reported his investigation findings to WOU and to CLS as was his responsibility. Reply, Ex. 1, 2; Hatch Aff., Ex. 2, 6, 10. Young's conduct was authorized, even required, by state regulations and was, therefore, of the type he was hired to perform. *See* ORS 348.603;[1] OAR 583–040–0005;[2] ORS 345.030.[3]

Plaintiffs contend that ORS 345.015(4) exempted them from state regulation under ORS Chapter 345 because it exempts training that is "advertised or promoted to be in the nature of professional self-improvement but *is not advertised or promoted* as leading to or fulfilling the requirements for licensing, certification, accreditation or education credentials." (Emphasis added.) However, the statute clearly does *not* exempt those programs that are promoted as leading to certification, and it was plaintiffs' promotion of the program as leading to a "Professional Certificate" that apparently prompted the complaint and subsequent investigation of the program. Thus, plaintiffs' program is not exempt under ORS 345.015, and defendant Young's conduct in dealing with CLS was of the kind he was hired to perform.

### b. Conduct occurred in authorized time and space

There is no allegation that Young's conduct was performed outside of the space and time related to his employment.

### c. Conduct motivated by purpose to serve employer

While plaintiffs allege that Young was motivated by "his personal agenda," Response, p. 7, they provide no evidentiary support for this assertion and none can be inferred from the record, particularly as Young initiated the investigation only upon receiving a complaint and was responsible for responding to the complaint. Thus, the only reasonable conclusion to be drawn from the facts is that Young was motivated by a purpose to serve his employer, the ODA and state of Oregon. Hence, Young's conduct was within the scope of his employment.

Plaintiffs' argument that, under *Berry*, the court cannot simply accept the Attorney General's assertion of immunity is accurate but does not alter my decision today. *Berry* held that the court should determine for itself whether the defendant

---

1. ORS 348.603 delegates to the ODA the responsibility of terminating "substandard or fraudulent degree activities" and reviewing "proposed new publicly funded post-secondary programs and locations." (WOU is a publicly funded post-secondary school.)

2. OAR 583–040–0005(1) gives the ODA the "responsibility to prevent new publicly funded post-secondary programs or locations from causing detrimental duplication or significantly adverse intersegmental impact."

3. ORS 345.030 requires the licensure of career schools, defined in ORS 345.010 as "any private proprietary professional, technical, home study, correspondence, business or other school instruction, organization or person that offers any instruction or training *for the purpose or purported purpose* of instructing, training or preparing persons for any profession." (Emphasis added.)

was acting within the scope of employment and should not dismiss the claims against a defendant in his or her individual capacity "until it is satisfied that there is either no legal or no factual basis for them." 141 Or.App. at 231, 917 P.2d 1070. In that case, the trial court had not made an independent determination of either the factual or legal basis for immunity. In contrast, I have analyzed whether defendant Young was acting within the scope of his employment and determined that he was within the scope of his employment in the conduct alleged here, thus *Berry* is not controlling. I conclude that the state of Oregon is the only proper defendant for all of the state tort claims.

### 2. *Eleventh Amendment Immunity*

■ It is well established that the Eleventh Amendment bars citizens from bringing claims against a state or state agency in federal court unless the state has waived its immunity or Congress abrogates it under the Fourteenth Amendment. *See Alden v. Maine,* —— U.S. ——, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Duffy v. Riveland,* 98 F.3d 447, 452 (9th Cir.1996) (citing *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). The state of Oregon has not consented to the suit, MSJ, p. 5, and plaintiffs have not shown a basis for federal court jurisdiction over the state for these claims. Thus, the Eleventh Amendment bars the state tort claims raised in plaintiffs' complaint from being heard in this court.

### B. *Antitrust Claims*

Plaintiffs claim that defendants violated the Sherman Act, 15 U.S.C. §§ 1, 2, "in restraining trade and intent to monopolize trade in a specific geographic area through activities prohibited by law including 'sham' complaints to governmental agencies designed to restrain trade and to drive [plaintiffs] from a specific geographic market through harassment rather than through legitimate process." Complaint ¶ 31.

■ To prevail on a claim under 15 U.S.C. § 1, plaintiffs must satisfy the following elements: "(a) the existence of a combination or conspiracy, (b) entered into by the parties in order to achieve monopoly power and effectuate an unreasonable restraint of trade, and (c) causal antitrust injury." *Foremost Int'l. Tours, Inc. v. Qantas Airways Ltd.,* 478 F.Supp. 589, 594 (D.Haw.1979) (citing *Knutson v. Daily Review, Inc.,* 548 F.2d 795 (9th Cir.1976)). The focus of a § 1 analysis is on "evidence of an unreasonable restraint of trade resulting from action undertaken pursuant to the conspiracy or agreement." *Foremost,* 478 F.Supp. at 595. With respect to the evidence adduced in support of an antitrust claim in a § 1 context, " 'antitrust law limits the range of permissible inferences from ambiguous evidence.' " *Pacific Exp., Inc. v. United Airlines, Inc.,* 959 F.2d 814, 816 (9th Cir.1992)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

■ To prevail on a monopolization of trade or commerce claim under 15 U.S.C. § 2, plaintiffs must establish the following elements: (1) defendants possess monopoly power in the relevant market, (2) defendants willfully acquired or maintained their monopoly power, and (3) causal antitrust injury. *See Pacific Express,* 959 F.2d at 817 (citing *Movie 1 & 2 v. United Artists Communications, Inc.,* 909 F.2d 1245, 1254 (9th Cir.1990)). A claim that defendants *attempted* to monopolize must establish the following facts: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury. *Pacific Express,* 959 F.2d at 817 (citing *Movie 1 & 2,* 909 F.2d at 1254). Within the meaning of § 2, "monopoly" means "the acquisition of power to fix prices, limit production, and deteriorate quality." *Lynch v. Magnavox, Co.*

*et al.,* 94 F.2d 883, 888 (9th Cir.1938) (citing *Standard Oil Co. of New Jersey v. United States,* 221 U.S. 1, 52, 53, 61, 31 S.Ct. 502, 55 L.Ed. 619 (1911)). The Sherman Act also is violated if an organization takes action in furtherance of a plan with the purpose of imposing an "unreasonable restraint" other than monopoly or price-fixing. *See Lynch,* 94 F.2d at 890.

 Defendants do not maintain monopoly power in the paralegal training market. Defendants regulate plaintiffs and plaintiffs' competition in the relevant market; they do not compete with plaintiffs in the relevant market. Plaintiffs allege that defendants restrain trade through "sham" complaints, presumably referring to the complaint lodged by PPC. Plaintiffs further allege that defendants used harassment, rather than legitimate process, to effectuate this restraint of trade. While the correspondence between Oregon's agents and CLS was somewhat heated, plaintiffs' evidence falls short of demonstrating that defendants harassed them. Indeed, defendant Lindley repeatedly attempted to resolve the dispute, while plaintiffs responded both by objecting to the demands and, occasionally, by acquiescing to them. Thus, plaintiffs also fail to establish an unlawful motive on behalf of defendants.

In summary, plaintiffs have not shown that defendants intended to destroy competition in the paralegal training market, or that defendants' regulatory efforts were predatory or anti-competitive and aimed at achieving an illegal purpose such as unreasonable restraint of trade. Thus, plaintiffs have failed to establish an antitrust claim under either § 1 or § 2 of the Sherman Act. Because plaintiffs' claim for treble

damages under the Clayton Act, 15 U.S.C. § 15, is based upon their antitrust claim, plaintiffs' claim for treble damages also fails.

### C. Federal Civil Rights Claims

#### 1. Section 1983

Plaintiffs allege that defendants infringed upon their civil rights "to engage in interstate commerce and to be free from unreasonable restraints of trade." Complaint ¶ 86. Because plaintiffs also allege that this court has jurisdiction under 42 U.S.C. § 1983, I assume that they mean to bring their civil rights claim under § 1983.[4] Plaintiffs further allege that the defendants' uneven enforcement of ORS 345.030 constitutes unconstitutional discrimination, because the statute's predecessor, ORS 348.835, was ruled unconstitutional in part because it applied differently to out-of-state schools operating in Oregon. *See City University v. State of Oregon, Office of Educational Policy and Planning,* 126 Or.App. 459, 870 P.2d 222 (1994); Response, pp. 10–11.

Because claims brought against state officials in their official capacity and claims brought against state officials in their personal or individual capacity are treated differently, these claims are addressed separately here.

#### a. Defendants Sued in Official Capacity

The Supreme Court determined in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that "a State is not a person within the meaning of § 1983." 491 U.S. at 64, 109 S.Ct. 2304; *see also Thompson v. City*

---

4. Plaintiffs claim that this court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983, but § 1983 contains no jurisdictional provision. Congress provided for federal jurisdiction over federal civil rights claims in 28 U.S.C. § 1343. *See Ybarra v. Town of Los Altos Hills,* 503 F.2d 250, 252 (9th Cir.1974); *York v. Story,* 324 F.2d 450 (9th Cir.1963). Strictly speaking, federal courts have subject matter jurisdiction over § 1983 claims pursu-

ant to 28 U.S.C. § 1331, as long as the complaint alleges " 'a right to recover under the Constitution and laws of the United States,' " and is not " 'wholly insubstantial and frivolous.' " *Keniston v. Roberts,* 717 F.2d 1295, 1298 (9th Cir.1983) (quoting *Jackson Transit Authority v. Local Division 1285,* 457 U.S. 15, 21 n. 6, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982)).

*of Los Angeles,* 885 F.2d 1439, 1443 (9th Cir.1989) (determining that the University of California is "an arm of the state" and therefore not a person within the meaning of § 1983). Suits against state officials in their official capacity are suits "against the official's office" and thus "no different from a suit against the State itself." *Will,* 491 U.S. at 71, 109 S.Ct. 2304.

■ To resolve any doubts regarding state officials' liability in § 1983 claims, the Supreme Court held in *Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), that state officials who are *sued* in their official capacities "are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." 502 U.S. at 27, 112 S.Ct. 358 (citing *Will,* 491 U.S. at 71, 109 S.Ct. 2304). However, state officials who are *sued* in their personal capacities are "persons" within the meaning of § 1983. *See Hafer,* 502 U.S. at 27–29, 112 S.Ct. 358. As such, the focus of analysis is not on "the capacity in which the officer inflicts the alleged injury" but on the capacity in which the state official is sued. *Id.* at 26, 112 S.Ct. 358.

In this case, plaintiffs sue all of the defendants in their official capacities only, except defendant Young. Thus, the § 1983 claims against defendants ODE, OESS, the State of Oregon, Lindley, Fleming, and Young in his official capacity are not properly before this court, because the state officials sued in their official capacities, arms of the state, and the state itself, are not persons within the meaning of § 1983 and therefore are not liable under § 1983. *See Will,* 491 U.S. at 64, 109 S.Ct. 2304; *Thompson,* 885 F.2d at 1443; *see also Peters v. Lieuallen,* 693 F.2d 966 (9th Cir.1982) (finding that a suit brought under either § 1981 or § 1983 against the Oregon State Board of Higher Education is "a suit against the state qua state" and hence barred by the Eleventh Amendment); *Jackson v. Hayakawa,* 682 F.2d

1344, 1350 (9th Cir.1982) (finding the University of California and the Board of Regents to be "instrumentalities of the state for purposes of the Eleventh Amendment").

### b. *Defendant Sued in Personal Capacity*

■ With respect to their § 1983 claim against defendant Young in his personal capacity, plaintiffs fail to satisfy the elements of a § 1983 claim, because defendant Young's conduct remained within the confines of his official authority. There are two essential elements to a claim brought under § 1983:(1) that the defendant acted under color of state law and (2) that the conduct deprived a person of rights, privileges, or immunities conferred by the Constitution or laws of the United States. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

With respect to the first element, Young's actions fell within the purview of his responsibilities as defined by Oregon law, as discussed previously, and he was, therefore, acting under color of state law. *See* ORS 348.603, ORS 345.030, OAR 583–040–0005.

With respect to the second element, however, Young's conduct did not violate rights conferred to plaintiffs by either the Constitution or federal statutes. Plaintiffs assert that Young violated their right to "engage in interstate commerce" and "be free from unreasonable restraints of trade." Complaint ¶ 86. Young did not violate the constitutional rights, conferred to plaintiffs in the "negative" commerce clause,[5] when he required that CLS either seek licensure or obtain sponsorship from WOU to continue operating as a career school in Oregon.

---

**5.** Plaintiffs do not specify what federal statute or portion of the Constitution defendants allegedly violated. Given the nature of the

rights plaintiffs assert, I analyze their claim under the "negative" Commerce Clause.

The "negative" commerce clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of State of Oregon,* 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). In analyzing a law under the negative commerce clause, the initial inquiry centers on whether the law is discriminatory or " 'regulates evenhandedly with only "incidental" effects on interstate commerce.' " *Id.* (quoting *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)). Regulations falling into the latter category are valid unless " 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.' " *Id.* (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)).

Plaintiffs contend that ORS 345.030 is discriminatory in its enforcement, but they apparently concede that it is not discriminatory on its face. *See* Complaint, pp. 10–11. Thus, the focus of this analysis is on the incidental effects of the law on interstate commerce. The law in question is not excessively burdensome, as it merely requires the licensure of career schools. *See* ORS 345.030. The standards for licensure are codified in ORS 345.325, which plaintiffs do not challenge. Plaintiffs did not seek licensure, nor do they assert that the standards were too stringent to permit compliance. Thus, plaintiffs have failed to demonstrate that defendant Young violated § 1983 in his contact with CLS.

2. *Section 1985(3)*

Plaintiffs also claim that defendants conspired to interfere with plaintiffs' civil rights, in violation of 42 U.S.C. § 1985(3). To prevail on a claim of civil rights conspiracy, plaintiffs must allege and prove four elements:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Keenan v. Allan,* 889 F.Supp. 1320, 1364 (E.D.Wash.1995), *aff'd.,* 91 F.3d 1275 (9th Cir.1996).

A conspiracy under § 1985(3) is "an agreement between two or more individuals to deprive a person of some protected right, where one individual acts in furtherance of the objective of the conspiracy, which causes an actual injury to a person or property, or deprives a person of exercising any right or privilege as a United States citizen." *Rios v. Navarro,* 766 F.Supp. 1158, 1162 (S.D.Fla.1991). Each member of the conspiracy "must have knowledge of the nature and scope of the agreement." *Id.*

The second element of a civil rights conspiracy claim requires a showing of both (a) a "legally protected right" and (b) " 'deprivation of that right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators" action.' " *Keenan,* 889 F.Supp. at 1364 (quoting *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1536 (9th Cir.1992)) (dismissing the conspiracy claim on motion for summary judgment, primarily due to plaintiffs' insufficient showing under the second element, finding that " 'persons who complain about sexual harassment' is not a qualifying class"). The "class" that is targeted by the defendant must be "something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Keenan,* 889 F.Supp. at 1364; *see also Lopez v. Arrowhead Ranches, et al.,* 523 F.2d 924, 928 (9th Cir.1975) ("Of itself, the creation of a class of victims by tortious conduct does not bring a claim within § 1985(3); such a class is created by every tort").

Aside from the bare allegations, plaintiffs provide no evidence to support

even an inference of conspiracy to deprive plaintiffs of the rights conferred under the negative commerce clause or of Young's alleged intent to drive CLS from the paralegal training market. Indeed, though CLS did not attempt to gain licensure, defendants did attempt to craft an exemption for CLS.

Certainly, the second element is not satisfied here. Plaintiffs appear to claim that defendants violated their federally protected rights by conspiring "together and with employees of Oregon ... to drive Plaintiffs from the marketplace." Complaint ¶ 89. Plaintiffs apparently claim that this action violated their "right to conduct commerce in Oregon and to be free from unreasonable restraints, free from arbitrary and selective government interference, and free from conspiracies involving government employees to violate Plaintiff's protected rights." Complaint ¶ 82.

Plaintiffs' claim appears to be precisely the type to which the Ninth Circuit referred in *Lopez*, in that the "class" plaintiffs assert here is comprised of "paralegal training programs regulated by defendants." Thus, plaintiffs have failed to satisfy the legal requirements for a civil rights conspiracy claim. Even if plaintiffs stated a claim under § 1985(3), they failed to provide any evidence to survive defendants' motion for summary judgment.

## CONCLUSION

Defendants' motion for summary judgment (# 27) as to all claims is GRANTED, and this case is dismissed. Any other pending motions are denied as moot.